IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEL C. SAMPLE,     :<br>   *Plaintiff*,                     :<br>                                          :<br>v.                                     :<br>                                          :<br>KATHLEEN McGETTIGAN, Acting Director, :<br>United States Office of Personnel Management, :<br>   *Defendant*.                    : | CIVIL ACTION<br>NO. 21-1239 |

<u>**MEMORANDUM**</u>

**Jones, II   J.**                                                                                              **February 17, 2022**

### I.     Introduction

Renel Sample ("Plaintiff") has worked at the United States Office of Personnel Management ("OPM") in the Philadelphia Service Branch since April of 2002.  Throughout his employment, he has applied for multiple promotions and only been selected for one (1). Plaintiff alleges that this is because OPM primarily promotes younger, white females, and Plaintiff is a 57-year-old, African American male.  Plaintiff filed a Complaint against Kathleen McGettigan, the Acting Director of the United States OPM (hereinafter "Defendant"), alleging the following four (4) claims: (1) age discrimination under the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA") through disparate treatment; (2) race discrimination under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") from disparate treatment; (3) gender discrimination under Title VII through disparate treatment; and (4) age discrimination under Title VII and the ADEA for retaliation.

Presently before the Court is Defendant's Partial Motion to Dismiss (hereinafter "Motion").  Therein, she argues that Counts I-III of Plaintiff's Complaint must be dismissed for failure to allege a prima facie case of discrimination under Title VII or the ADEA.  For the following reasons, Defendant's Motion is denied.

**II.     Statement of Facts**

Plaintiff began working at OPM in the Philadelphia Service Branch as a Human Resource Specialist in April of 2002.  Compl., ECF No. 1, ¶ 18.  He worked within the Human Resource Solutions (hereinafter "HRS") Federal Staffing Center (hereinafter "FSC/Acquisition Group") and was a GS-12 at the time of his hiring.  Compl. ¶ 18.  Presently, Plaintiff is still employed at OPM in the Philadelphia branch, HRS FSC/Acquisition group as a GS-13.  Compl. ¶ 19.  Plaintiff is a 57-year-old, African American male.  Compl. ¶ 19.

Plaintiff alleges that, throughout his tenure, OPM filled management positions with primarily white, younger females.  Compl. ¶ 30.  In the last sixteen (16) years, Plaintiff has applied for multiple promotional positions and only received one.  Compl. ¶ 31.  Plaintiff claims he only received that promotion after he filed a claim with the Equal Employment Opportunity Commission (hereinafter "EEOC") in 2007 for race-based non-selection.  Compl. ¶ 27.  Plaintiff also filed an aged-based complaint in 2011.  Compl. ¶ 27.

**A.  Temporary Detail as a Branch Manager in Kansas City, MO**

On or about March of 2018, Plaintiff submitted his resume in applying for a 120-day detail/temporary promotion as an OPM/HRS supervisory specialist/Midwest branch manager in Kansas City, MO (hereinafter "Kansas City position").  Compl. ¶¶ 20-21.  This was a GS-14 position.  Compl. ¶ 20.  Though Plaintiff was interviewed for the job, Josh Chapman, a Caucasian male below the age of 40, was selected.  Compl. ¶ 22.  Chapman had worked at OPM for five (5) years and allegedly never reached the skill level of Plaintiff, particularly because Chapman left OPM for three (3) years before applying to the Kansas City position.  Compl. ¶¶ 23-24.

During his time at OPM, Chapman worked under Erika Vega when she was the Kansas City Supervisor. Compl. ¶ 23. Vega, a white female younger than Plaintiff, was hired at OPM three (3) years after Plaintiff as a GS-7. Compl. ¶¶ 25-26. She presently serves as Plaintiff's second-line supervisor. Compl. ¶ 25. Vega, either alone and/or with Diane Saxman, a white female younger than Plaintiff, were the deciding officials for the Kansas City position. Compl. ¶ 25. Though both Saxman and Plaintiff joined OPM together as GS-12s, Saxman advanced quicker than Plaintiff, despite him having ten (10) more years of experience. Compl. ¶ 65.

### B. Branch Manager Position in Philadelphia, PA

On July 30, 2018, Vega learned from GS-14 Philadelphia Branch Manager Gloria Garza, a 67-year-old, Hispanic female, that Garza's husband had suffered a medical emergency. *See* Vega EEO Aff.,[1] attached to Mot. as Exhibit D (hereinafter "Ex. D"), 3.[2] As a result, Garza was intermittently out of the office in the following weeks. Ex. D, 3. To ensure continuity of the operations, on August 20, 2018, Garza created a rotating schedule where each GS-13 employee in the Philadelphia branch, Plaintiff included, acted in the branch manager role. Ex. D, 3. In September, Garza's husband suffered another medical setback, and she was approved for continuous sick leave. Ex. D, 3.

To temporarily replace Garza, Vega consulted with OPM Human Resources (hereinafter "HR"), who allegedly advised that a current GS-14 supervisor could temporarily serve in the

---

[1] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). "However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (internal citations omitted) (emphasis in original). This Circuit has interpreted this standard to require the claims in the complaint be based upon an extrinsic document, even if it does not cite it explicitly. *Id.* Because Plaintiff's Complaint incorporates reference to the EEO administrative hearings, this Court may consider the filings of such hearings without converting the present Motion into a motion for summary judgment. *See* Compl. ¶¶ 7-17.
[2] The Court will utilize the pagination from the ECF filing.

3

role.  Ex. D, 3.  Plaintiff alleges that he was qualified to manage the Philadelphia office because, in addition to having 26 years of federal service as an HR specialist/acting supervisor, he also frequently stepped into the supervisory role whenever his supervisor was out.  Compl. ¶¶ 35-36.  Nonetheless, OPM filled the role with Kathy Hidalgo, the manager of the San Antonio Service Center.  Compl. ¶¶ 33-34.  Under this arrangement, Hidalgo, a Hispanic female around Plaintiff's age, would fly from San Antonio to Philadelphia two (2) days each week to manage the office while also keeping her position in San Antonio.  Compl. ¶¶ 34-35.

By November of 2018, Hidalgo admitted that she could not keep up managing both offices, so OPM decided that Hidalgo should manage the Philadelphia branch full time and announced an opening for a temporary position as the San Antonio Branch Manager.  Compl. ¶ 38.  Hidalgo invited Plaintiff to apply for the San Antonio position, and he was, ultimately, offered an interview.  Compl. ¶¶ 39-40.  However, on or about November 21, 2018, Plaintiff learned he was not selected, and it was announced that Rosann Barton, a younger, white female, was chosen for the 120-day appointment.  Compl. ¶ 41.[3]

### C.  Supervisory HR Specialist Position in Philadelphia, PA

On or about October 15, 2018, Plaintiff applied for an open supervisory HR specialist position (19-002-GLM-MP) in the Philadelphia branch, but he was not granted an interview.  Compl. ¶ 47.  Rather, around January 8, 2019, Vega, the selecting official, along with Hidalgo, decided to close the position announcement because they did not feel there was a "worthy" applicant for the job.  Compl. ¶¶ 51-52.

---

[3] Plaintiff admits that he has never raised any complaint over not being chosen for the San Antonio job with the EEOC.  Compl. ¶ 13.  Because this administrative requirement remains unexhausted, the Court will not further consider any allegation of discrimination related to this San Antonio position.

Around January 25, 2019, Plaintiff learned of a re-announcement for the job, with the only change being the identification number of the position: 19-002-GLM-MP became 19-074-GLM-MP. Compl. ¶¶ 54-55. Again, Plaintiff applied and was selected for an interview, but he was, ultimately, not the chosen candidate. Compl. ¶¶ 58-59. As Plaintiff learned on April 8, 2019, the selected employee was Tamika Williams, a younger, black female with no OPM experience. Compl. ¶¶ 59-60.

### D. Plaintiff's Continued Non-Promotion

Around September of 2020, Vega was moved to a GS-15 position, and OPM allowed Williams, Janine Beatty, and Gammon (all younger females) to act in temporary fills as GS-14s. Compl. ¶ 63. Around sixty (60) days before Plaintiff filed the present Complaint, Beatty, who Plaintiff had trained as a GS-7 student intern, was promoted to permanently fille Vega's position as a GS-15, and Gammon was moved to permanently fill Beatty's vacant position as a GS-14. Compl. ¶ 64.

### III. Procedural History

Plaintiff filed a formal EEO Complaint on August 28, 2021, alleging that his non-selection for the Kansas City position constituted discrimination based on his race, sex, and age and constituted retaliation for the prior EEO complaints he filed in 2007 and 2011. Compl. ¶¶ 7-11; 27. His EEO Complaint was amended three (3) times: once in November of 2018 to add similar allegations regarding the Philadelphia Branch Manager position; a second time in February of 2019 to add claims regarding the initial posting, closing, and reposting of the Philadelphia Supervisory Specialist position; and a third in August of 2020 to add a claim that his non-selection for the reposted Supervisory HR Specialist position constituted retaliation. Compl. ¶¶ 12-14.

When this administrative case was not finally adjudicated within six (6) months of the acceptance of the final claim, on March 22, 2021, Plaintiff commenced the present action in the United States District Court for the Eastern District of Pennsylvania.  Compl. ¶¶ 1, 17.  Plaintiff's Complaint asserts four (4) violations: (1) age discrimination under the ADEA through disparate treatment; (2) race discrimination under Title VII from disparate treatment; (3) gender discrimination under Title VII through disparate treatment; and (4) age discrimination under Title VII and the ADEA for retaliation.

On June 11, 2021, Defendant filed the present Partial Motion to Dismiss for Failure to State a Claim.  ECF No. 10.  Therein, Defendant moves for dismissal, or in the alternative for summary judgment, as to counts I-III of Plaintiff's Complaint for failing to make a prima facie showing of discrimination.  Mot. 11.  Plaintiff filed a Response in Opposition (hereinafter "Response") (ECF No. 8) to such argument on July 23, 2021, and Defendant filed a Reply in Support of her Motion (hereinafter "Reply) (ECF No. 11) on August 2, 2021.  With these filings, Defendant's Motion is ripe for the Court's review.

**IV.     Standard of Review**

Rule 12(b)(6) provides for dismissal of a complaint, in whole or in part, for failure to state a claim upon which legal relief can be granted.  In deciding a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318 (3d Cir. 2008) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  While these claims do not require detailed facts, "a complaint must do more than allege the plaintiff's entitlement to relief.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  A complaint must "show" the plaintiff is entitled to relief.  Id.  (quoting *Phillips v. Cty. of*

*Allegheny*, 515 F.3d 224, 234-235 (3d Cir. 2008)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings, Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2008)); *see also Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). In the Third Circuit, the Court's review "is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate when, even assuming all of plaintiff's claims as true, plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If a plaintiff does not "nudge [his/her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*.

V.   Discussion

"The ADEA and Title VII prohibit discrimination on the basis of age and sex, respectively." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Because Plaintiff has not provided direct evidence of discrimination, the Court's analysis is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Gree*n. 411 U.S. 792 (1973). Under the first prong of *McDonell Douglas*, Plaintiff bears the burden of plausibly alleging a

prima facie case of discrimination. To survive the present Motion, Plaintiff must plausibly allege that: (1) he was a member of a protected class;[4] (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) a similarly situated person outside his class was treated more favorably under circumstances supporting an inference of discrimination. *Burton*, 707 F.3d at 426.

If the plaintiff is successful in presenting a prima facie case, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the employment action." *Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home*, No. 13-CV-2463, 2014 WL 2921534, at * 2 (E.D. Pa. June 27, 2014) (citing *McDonnell Douglas*, 411 U.S. at 802)). If the employer presents such reason for the employment action, "the burden shifts back to the plaintiff to show that the employer's proffered reason was in fact pretext for the discrimination." *Id*.

### A. Plaintiff's Qualifications for the Positions

"A court considering a discrimination claim must evaluate the question of the 'plaintiff's qualifications for purposes of proving a prima facie case by an objective standard.'" *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (citing *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990)). "'[W]hile objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to' consideration of whether the employer's nondiscriminatory reason...is pretext[ual]." *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 462 (E.D. Pa. 2013) (citing *Weldon*, 896 F.2d at 798)).

---

[4] Because neither party disputes Plaintiff's membership in a protected class, the Court will assume he has met such burden at this early pleading's stage.

Here, Defendant argues that Plaintiff was not qualified for either the Kansas City or the Philadelphia Branch Manager position. Mot. 12-13.[5] The Court will address each in turn.

### 1. Qualification for the Kansas City Position

As to the Kansas City position, Defendant asserts that Plaintiff did not file the requisite SF-50 form with his application, and he was the only candidate who failed to do so. Mot. 13. Additionally, the other candidates lived and had prior experience working in Kansas City. Mot. 13. Plaintiff does not deny that he failed to submit this SF-50 form with his application. Rather, he responds that location was not a selecting factor for the position, and he met all the other qualifications. Response 7-8. Having reviewed the filings, the Court finds that Plaintiff was plausibly qualified for the Kansas City position.

Looking to the Kansas City position's announcement[6], the required experience section states, "[a]pplicants must have one year of specialized experience at the GS-13 level in the Federal government (or equivalent) advising and assisting on the policies and issues involved in providing reimbursable HR consulting services..." *See* Kansas City Position Announcement, attached to Mot. as Exhibit C (hereinafter "Ex. C"). Plaintiff, undisputedly, meets this pre-requisite. The announcement is void of any preference for an applicant from or familiar with Kansas City. Though the announcement also states that those interested in applying "should submit [their] resume and most recent SF-50," "[a] failure to apply formally for a job opening will not necessarily bar a Title VII or ADEA plaintiff from establishing a prima facie claim...especially when the plaintiff has made every reasonable attempt to convey his interest in

---

[5] Defendant does not dispute that Plaintiff was qualified for the Philadelphia HR Supervisory Specialist position. Thus, the Court need not address this position at this stage of the *McDonnell Douglas* analysis.
[6] Because Plaintiff's Complaint refers to the Kansas City position's "announcement criteria," the Court may consider the content of such announcement without converting the present Motion into a motion for summary judgment. Compl. ¶ 21.

9

the job to the employer." Ex. C; *Robinson v. Matthews Intern. Corp.*, No. 06-CV-1504, 2009 WL 735876, at *8 (W.D. Pa. Mar. 20, 2009) (citing *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990)).  Because Plaintiff submitted his resume and was selected for an interview, it is entirely unpersuasive for Defendant to argue that he was not qualified for the position just for failing to attach his SF-50 form[7] to the application.

### 2. Qualification for the Philadelphia Branch Manager Position

Defendant also alleges that Plaintiff was not qualified for the Philadelphia Branch Manager position because they were looking for a GS-14 employee, and Plaintiff was only a GS-13.  Mot. 15.  Plaintiff responds that, even as a GS-13, he had filled in as the Branch Manager, and Vega's alleged GS-14 requirement is a ruse to prevent Plaintiff from being considered for this position.  Response 14.  Given this factual dispute, and, without further discovery, this Court cannot confidently conclude whether Plaintiff was qualified for this position.  Especially because Plaintiff and other GS-13 employees had stepped into the Philadelphia Branch Manager role when Garza was on her intermittent sick leave, this Court finds it plausible that he was qualified to apply for the position.

### B. Adverse Employment Actions

Having found it plausible that Plaintiff qualified for the positions at issue, the Court must next determine if he suffered any adverse employment actions.  "'To satisfy the third element of the prima facie case, an employee must allege an adverse employment action sufficiently severe to have altered the employee's compensation, terms, conditions, or privileges of employment, or to have deprived or tended to deprive him of employment opportunities or otherwise adversely affected his status as an employee.'"  *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 489 (E.D. Pa.

---

[7] Such a form is a documentation of personnel action that can affect a federal employee's position or pay.

2018) (citing *Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 324 (E.D. Pa. 2017)). "'The plaintiff does not have to show economic or tangible discrimination, but at the same time, not every insult, slight, or unpleasantness gives rise to a valid claim.'" *Id*. (citing *Howell*, 283 F. Supp. 3d at 324). In fact, "[t]o qualify as an adverse employment action in the discrimination context, an action must create 'a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a significant change in benefits.'" *Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd.*, 704 F. App'x 164, 168 (3d Cir. 2017) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (emphasis in original).

"In cases where an employee seeks transfer to a new position within the same organization, courts require that the employee demonstrate that the transfer sought would have resulted in a promotion, i.e., that the position was objectively better than his or her current position." *Woods v. Salisbury Behavioral Health, Inc.*, 3 F. Supp. 3d 238, 251 (M.D. Pa. 2014) (citations omitted). "[T]he denial of a position for which an employee has a subjective preference without showing that the position is objectively better than his or her current position fails to establish the adverse employment action necessary for a prima facie case of discrimination." *Id*. at 252 (citations omitted).

Here, Plaintiff asserts that his non-selection for the Kansas City, Philadelphia Branch Manager, or Philadelphia Supervisory HR Specialist positions constitutes adverse employment actions. The Court will address each in turn.

### 1. Non-Selection for the Temporary Kansas City Position

Plaintiff first claims that his non-selection for the temporary promotion of the Kansas City position constitutes an adverse employment action. Defendant argues that some courts have

declined to find an adverse employment action where the employee was not chosen for a temporary detail. Mot. 12. Plaintiff responds that a temporary position can lead to an advance in grade and pay by becoming a permanent position, thus constituting an adverse employment action. Response 8. After reviewing the filings, the Court finds that non-selection for the Kansas City position may reasonably be an adverse employment action.

Though Defendant cites to cases from the D.C. Circuit and Fourth Circuit to suggest that denial of a temporary position cannot constitute an adverse employment action, Defendant fails to cite, and this court fails to find, any case from the Third Circuit or surrounding districts that echo this point. Mot. 10-11. In fact, when considering adverse employment actions for temporary positions, this Circuit has rejected such a conclusion and, rather, conducted a fact-specific inquiry to determine whether the plaintiff has "shown that the placement [in the desired position would] increase[] [his] opportunity for advancement relative to [his present position]." *Remp v. Alcon Labs., Inc.*, 701 F. App'x 103, 107 (3d Cir. 2017). In such instances, courts have considered factors such as whether there was an increase in salary or benefits or if the position would provide different opportunities that the plaintiff could not otherwise receive. *See Griffiths v. Nielsen*, No. 15-CV-2586, 2018 WL 1469051, at *8 (D.N.J. Mar. 23, 2018).

When the plaintiff's desired position did not result in an increased salary, though not alone dispositive, courts have declined to find that they suffered an adverse employment action. *See Remp*, 701 F. App'x at 107 (holding that non-selection for a temporary position was not an adverse employment action, at least in part, because the position did not initially entail an increase in salary); *Griffiths*, 2018 WL 1469051, at *8 (considering the lacking increase in pay or benefits when deciding that non-selection for a temporary supervisory position did not constitute an adverse employment action). Here, it is undisputed that the Kansas City position would have

increased Plaintiff from a GS-13 to a GS-14 pay scale. Compl. ¶ 20. Practically speaking, an increase in pay implies that there was a promotion of some sort. Though there is little in his Complaint to suggest how the Kansas City position was specifically different from Plaintiff's present job, because Defendant has failed to argue that a position with an increase in pay should not be considered a promotion, the Court finds that Plaintiff's denial for the Kansas City position could reasonably be an adverse employment action.

### 2. Non-Selection for the Philadelphia Branch Manager Position

The Court next turns to whether Plaintiff's non-selection for the temporary Philadelphia Branch Manager position can reasonably be considered an adverse employment action. Much like the Kansas City position, Defendant argues that a temporary detail cannot be considered an adverse employment action,[8] and she reiterates that, because the position was meant for someone presently at a GS-14 pay scale, there would not have been a salary increase. Mot. 11-12. However, as previously mentioned, because the parties still dispute whether being a GS-14 was a pre-requisite for the Philadelphia Branch Manager position, without the benefit of discovery, the Court cannot confidently conclude that Plaintiff was not qualified for the position. Moreover, Plaintiff's qualifications are not relevant in analyzing the third prong of a prima facie case.

Thus, assuming Plaintiff was qualified, had Plaintiff been selected for the Philadelphia Branch Manager position, he would have been working in a GS-14 position. Defendant, again, has failed to argue that working in a position with an increased salary should not be considered a promotion, so the Court will not make that argument for her today. Accordingly, at this early,

---

[8] As previously stated, the Third Circuit has declined to conclude that denial of a temporary position cannot constitute an adverse employment action. Because the Court has already addressed this point at length in the preceding section, it will not consider such an argument further.

pleadings' stage, the Court finds that non-selection for the Philadelphia Branch Manager position could plausibly be an adverse employment action.

### 3. Non-Selection for the Philadelphia Supervisory HR Specialist Position

Finally, the Court must determine if Plaintiff's non-selection for the Philadelphia Supervisory HR Specialist position plausibly constitutes an adverse employment action. This was a position that OPM initially opened and then closed because there was allegedly no suitable candidate. Plaintiff then states that the same position was later re-opened under the guise of a different name. Defendant argues that this does not constitute an adverse employment action because it had no tangible impact on Plaintiff's employment. Mot. 14. In support of this position, Defendant cites to *Walker v. Centocor Ortho Biotech, Inc.*, but such reliance is unfounded when that case never dealt with the plaintiff's non-selection for a promotion. 558 F. App'x 216, 219 (3d Cir. 2014). Rather, as is made clear in *Walker*, "failure to promote...constitute[s] [an] adverse job action[]." Walker, 558 F. App'x at 219. Thus, the relevant inquiry is whether Plaintiff was plausibly denied a promotion when he was not chosen for the Supervisory HR Specialist position.

Looking at the job description for the Supervisory HR Specialist position, it notes that the pay grade for the position is GS-14. *See* Posting for Supervisory HR Specialist Position, attached to Mot. as Exhibit E. Because Plaintiff is presently a GS-13, clearly this would have constituted a monetary raise. For similar reasons as stated above, Plaintiff's non-selection for the Supervisory HR Specialist position could plausibly be an adverse employment action.

### C. Treatment of Similarly Situated Persons Outside Plaintiff's Protected Class

As the fourth prong in establishing a prima facie case, the Court must consider whether the relevant positions were "filled by a person not of [Plaintiff's] protected class." *Jones v.*

14

*School Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999) (internal citations and quotation marks omitted). In her Motion, Defendant argues that not only was Plaintiff treated the same as his similarly situated colleagues, but he also shares some of the same characteristics as the chosen candidates. Mot. 13-14. While the Court agrees and will later address Plaintiff's limitations for sharing characteristics with the chosen candidates, Defendant's argument that Plaintiff was treated the same as all other applicants is misplaced at this point in the *McDonnell Douglas* analysis. Such a claim is relevant in establishing Defendant's "legitimate nondiscriminatory reason" for Plaintiff's non-selection, and it will not be further considered for purposes of determining a prima facie case. *See Parker v. State Dept. of Pub. Safety*, No. 97-CV-503, 1999 WL 345403, at *3 (D. Del. May 11, 1999).

While the demographics of other applicants may also be relevant, neither party has provided the Court with any of their identifying information, likely because discovery has not yet been conducted. *See Robinson*, 2009 WL 735876, at *11. Thus, for purposes of the present Motion, the Court will solely consider the characteristics of both Plaintiff and those chosen for the Kansas City, Philadelphia Branch Manager, and Supervisory HR Specialist positions. Importantly, Plaintiff is a 57-year-old, African American male, and he has raised claims for race, gender, and age discrimination. Specifically, he argues that OPM has maintained a pattern of promoting younger, white females over someone who is more experienced for certain job positions. Compl. ¶ 28. The Court will address each relevant position in turn.

### 1. Candidate Chosen for the Temporary Kansas City Position

Josh Chapman, a Caucasian male below the age of 40, was selected to fill the temporary Kansas City position. Compl. ¶ 22. Chapman had only worked for OPM for five (5) years. Compl. ¶ 24. The Court agrees with Defendant that Plaintiff could not plausibly allege sex

discrimination related to this position because both Plaintiff and Chapman are males, but this does not prevent Plaintiff from using this non-selection to support a claim of sex and age discrimination.

### 2. Candidate Chosen for the Philadelphia Branch Manager Position

Kathy Hidalgo, a Hispanic, female candidate close to Plaintiff's age, was chosen to fill the Philadelphia Branch Manager position. Compl. ¶¶ 34-35. Though Plaintiff lived in Philadelphia, OPM chose to fly Hidalgo, the manager of the San Antonio Service Center, out two (2) days per week to manage the Philadelphia office while still maintaining her position in San Antonio. Compl. ¶ 35. It remains disputed whether Hidalgo is older or younger than Plaintiff, but they are clearly close in age. While there is no particular age difference required to support an inference of age discrimination, if discovery shows that Hidalgo is older than Plaintiff, clearly any argument of age discrimination as to the Philadelphia Branch Manager position would be unpersuasive. *See Robinson*, 2009 WL 735876, at *11. However, even if Hidalgo is older than Plaintiff, this would not prevent him from using this instance to at least support a claim of sex discrimination.

### 3. Candidate Chosen for the HR Supervisory Specialist Position

Unlike the Kansas City position and the Philadelphia Branch Manager position, the HR Supervisory Specialist position is unique because, at least regarding the original posting (19-002-GLM-MP), the position was closed with no candidate chosen. Compl. ¶¶ 51-52. Because no one was chosen to fill the position, any claim that this constitutes discrimination based upon sex, gender, or age fails because Plaintiff cannot identify how a person outside Plaintiff's protected class was treated more favorably.

However, when the position was re-opened (19-074-GLM-MP), though Plaintiff was selected for an interview, Tamika Williams, a younger, African American female with no experience at OPM, was selected for the position. Compl ¶¶ 58-60. For non-selection of the re-opened position (19-074-GLM-MP), Plaintiff could potentially bring a claim of both age and gender discrimination, though a claim of race discrimination would be unfruitful.

At this early pleading's stage, the Court is satisfied that Plaintiff has pled sufficient facts to plausibly support a prima facie case of gender, race, or age discrimination. Because Defendant's Motion solely addressed Plaintiff's inability to plead a prima facie case, the Court's *McDonnell Douglas* analysis need not go any further at the present juncture.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is denied. An appropriate Order follows.