IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RENEL C. SAMPLE,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 21-cv-1239 |
| | : | |
| **KIRAN AHUJA,**[1] **DIRECTOR,** | : | |
| **U.S. OFFICE OF PERSONNEL** | : | |
| **MANAGEMENT (*OPM*),** | : | |
| Defendant. | | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                                           **May 30, 2023**

Presently pending before the Court are Defendant's Motion for Protective Order (Def.'s Mot. for Protective Order, ECF No. 26), Plaintiff's memorandum of law in opposition to Defendant's motion (Pl.'s Mem. of Law, ECF No. 29), Defendant's reply in further support of its motion (Def.'s Reply, ECF No. 30), Plaintiff's Motion to Extend Deadlines for Completion of Fact Discovery and Expert Reports, and for Other Relief (Pl.'s Mot. to Extend, ECF No. 31), and Defendant's response thereto (Def.'s Resp., ECF No. 32). For the reasons that follow, Defendant's Motion for Protective Order shall be **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's motion to extend deadlines shall be **GRANTED**.

**I.     RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Renel Sample has worked at the Philadelphia Service Branch of the United States Office of Personnel Management ("OPM") since April 2002. (Compl., ECF No. 1, at ¶ 18). He currently is employed as a GS-13 employee with "the Philadelphia branch, HRS

---

[1] Kiran Ahuja is the current Director of the United States Office of Personnel Management. Pursuant to Federal Rule of Civil Procedure 25(d), she has been substituted as the Defendant in this case (hereinafter "Defendant" or "the government").

[(Human Resources Solutions)] FSC [(Federal Staffing Center)]/Acquisition group." (*Id.*)

Sample alleges claims for disparate treatment on the basis of age, race, and gender and retaliation on account of his prior EEO ("Equal Employment Opportunity") activities in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). (Comp., ECF No. 1, at 11-21). According to his Complaint, Sample raised the following five claims in the supplemented and amended administrative complaint he filed with OPM's EEO ("Equal Employment Opportunity") office/Equal Employment Opportunity Commission ("EEOC"): (1) his non-selection for "the 120 day detail/temporary promotion as the GS-0201-14 Supervisory HR Specialist/Midwest Branch Manager in Kansas City, MO with OPM/Human Resources (HRS)" ("Claim 1"); (2) the failure to provide him with an opportunity to apply for the temporary "Philadelphia Branch Manager" position by appointing a Caucasian female manager from the San Antonio office as acting supervisor instead of posting the position as a detail ("Claim 2"); (3) his non-selection for "the Supervisory HR Specialist Position, 19-002-GLM-MP, in Philadelphia with OPM/Human Resources (HRS)" on the grounds that the agency decided not to fill this vacancy from the announcement ("Claim 3"); (4) the agency's announcement that the vacancy for the "Supervisory HR Specialist Position, 19-002-GLM-MP" was closed because there were no "worthy candidates" ("Claim 4"); and (5) the re-announcement of the "Supervisory HR Specialist Position 19-002-GLM-MP" as "19-074-GLM-MP" with no apparent changes ("Claim 5").[2] (*Id.* at ¶ 13). The investigator accepted as an additional claim that OPM retaliated against Sample when he was not selected for the re-announced "Philadelphia Supervisory HR Specialist"

---

[2] The "Philadelphia Supervisory HR Specialist" position at issue in Claims 3-6 is otherwise known as the "Philadelphia Branch Manager" position, which is the subject of Claim 2. (Def.'s Mot. for Protective Order, ECF No. 26, at ¶ 4). The designations (*i.e.,* 19-002-GLM-MP and 19-074-GLM-MP) refer to different job announcements for the same position. (*Id.*).

position ("Claim 6"). (*Id.* at ¶ 14). Furthermore, "Complainant's EEO complaint (August 28, 2018) listed Erika Vega (Caucasian, female, under age 40), complainant's second-line manager in the role of Staff Acquisition Program Manager, as the principal discriminating individual." (*Id.* at ¶ 15).

In the Complaint filed in this action, Sample specifically alleges discrimination (or retaliation) in connection with the following five job positions or employment actions: (1) "**Branch Manager position, Kansas City MO.**;" (2) "**Philadelphia branch manager position**;" (3) "**Philadelphia supervisory HR specialist position (19-002-GLM-MP)**;" (4) "**HR Supervisory position (19-002-GLM) was closed under the guise of 'no worthy candidates**;'" and (5) "**HR supervisory position (19-002-GLM-MP) was re-announced (as 19-074-GLM-MP) with no apparent changes under the announcement**." (*Id.* at 4-10). Sample further alleges that other individuals (besides Vega) participated in the selection process for the various positions for which he allegedly applied. (*Id.* at ¶¶ 25, 33, 48, 51).

This matter was assigned to the Honorable C. Darnell Jones, II, and Defendant filed a partial (and contested) motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for partial summary judgment. (Def.'s Partial Mot. to Dismiss, ECF No. 5; *see also* Pl.'s Mem. of Law, ECF No. 8; Order, ECF No. 10; Def.'s Reply Mem., ECF No. 11; Stipulation & Order, ECF No. 12; Pl.'s Resp., ECF No. 13). Judge Jones denied the partial motion to dismiss. (Order, ECF No. 15; Mem., ECF No. 14).

After Defendant filed its Answer on March 3, 2022 (Answer, ECF No. 16), Sample propounded a Request for Production of Documents Directed to Defendant (First Set) ("RFPs") on April 25, 2022 and Interrogatories Directed to Defendant (First Set) ("Interrogatories") on May 6, 2022. (Def.'s Mot. for Protective Order, ECF No. 26, at ¶¶ 19-20; Pl.'s Mot. to Extend Deadlines, ECF No. 31, at ¶¶ 8-9). The parties consented to my jurisdiction, and the case was

referred to me on June 22, 2022. (Consent & Order, ECF No. 21). It became clear that the Sample and the government have serious disagreements concerning the scope of discovery in this case. (*See, e.g.*, Def.'s Mot. for Protective Order, ECF No. 26, at ¶¶ 30-37). On September 19, 2022, the government filed its Motion for Protective Order. (Def.'s Mot. for Protective Order, ECF No. 26). Sample filed his opposition to the motion on October 17, 2022, and the government filed a reply brief on October 18, 2022. (Pl.'s Mem. of Law, ECF No. 29; Def.'s Reply, ECF No. 30).

On October 20, 2022, Sample moved for an extension of time to compete discovery and to reset deadlines under the scheduling order. (Pl.'s Mot. to Extend, ECF No. 31). Defendant filed its opposition to the motion to extend on October 31, 2022. (Def.'s Resp., ECF No. 32). On November 8, 2022, the Court entered an order adjourning the deadlines for dispositive motions pending the resolution of the outstanding motions. (Order, ECF No. 33).

## II. LEGAL STANDARDS

### A. Protective Orders

"[T]he party seeking discovery must first demonstrate . . . relevance before the party seeking a protective order must demonstrate good cause." *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010), *aff'd*, Civil No. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010). Pursuant to Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevance is generally "construed broadly to encompass any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  Although liberal, discovery should not be unlimited.  *See, e.g.*, *Upshaw v. Janssen Res. & Dev., LLC*, Civil Action No. 11-7574, 2014 WL 1244047, at *3 (E.D. Pa. Mar. 26, 2014).  "Discovery should not serve as a fishing expedition."  *Id.* (citing *Province v. Ambulatory Health Servs., Inc.*, Civil Action No. 4:13-CV-0334, 2014 WL 47771 (M.D. Pa. Jan. 6, 2014)).

Once the discovering party demonstrates relevance, a party seeking a protective order must show that good cause exists to limit or foreclose discovery by demonstrating a particular need for protection.  *See, e.g.*, *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  In determining whether good cause exists for a protective order, courts employ a balancing test, weighing the requesting party's need for information against the injury that might result if disclosure is compelled.  *See, e.g.*, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994).  Injury includes annoyance, embarrassment, oppression, or undue burden or expense.  *See* Fed. R. Civ. P. 26(c)(1).  The alleged injury must be "clearly defined and serious" and "so unreasonable as to justify restricting discovery."  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981)); *DeFelice v. Consol. Rail Corp.*, 124 F.R.D. 603, 604 (W.D. Pa. 1989) (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2035 (1970)).  When the information and materials sought are relevant, a court should scrutinize an assertion that production would impose a disproportionate burden or expense.  *See, e.g.*, 8 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 2008.1 (3d ed. 2022) footnote omitted).  "Broad allegations of harm, unsubstantiated by specific examples or

articulated reasoning," do not establish good cause. *Cipollone*, 785 F.2d at 1121 (citations omitted).

When ruling on a discovery motion, the Court must take the facts pled in the complaint as true. *See, e.g.*, *Venneman v. BMW Fin. Servs., NA, LLC*, No. 2:09-CV-5672-ES-SCM, 2013 WL 3188878, at *1 n.1 (D.N.J. June 21, 2013).

### III. DISCUSSION

#### A. Motion for Protective Order

Defendant asks this Court for an order granting its protective order motion, sustaining its objections to Sample's interrogatories and requests for production of documents, and specifying the scope of the Complaint itself as limited to five disparate treatment claims and a claim of retaliation. (Def.'s Mot. for Protective Order, ECF No. 26, Prop. Order at 1-2). The disparate treatment claims are that Defendant discriminated against Sample: (I) on the basis of race and age when Vega selected Josh Chapman (a younger Caucasian) for the temporary Kansas City detail rather than Sample; (II) on the basis of race, gender, and age when Vega did not provide Sample with an opportunity to serve temporarily as the Philadelphia Branch Manager during Gloria Garza's absence on medical leave and instead appointed Kathy Hidalgo (an Hispanic female) to fill in during the absence; (III) on the basis of race, gender, and age when Vega closed the initially announced "Pennsylvania Branch Manager" position for which Sample had applied without selecting a candidate; (IV) on the basis of race, gender, and age when Vega announced that she closed without making a selection the "Philadelphia Branch Manager" position for which he had applied because "there were no 'worthy candidates;'" and (V) on the basis of race, gender, and age when Vega re-announced the same position "with no apparent changes to the announcement." (*Id.*). Sample alleges in "Claim VI" that Defendant retaliated against Sample

6

for his protected activity when Vega selected Williams rather than Sample for the re-announced "Philadelphia Branch Manager" position.  (*Id.* at 2).

The government contends that "the scope of Sample's Complaint, and therefore the proper scope of discovery, should be limited to the undisputed claims that Sample both administratively exhausted before the EEOC and properly pleaded in his Complaint," which was limited by Judge's Jones's ruling on the government's partial motion to dismiss.  (Def.'s Mem. of Law, ECF No. 26, at 1; Def.'s Mot. for Protective Order, ECF No. 26, at ¶ 14) (emphasis omitted).  The government further posits that most of the discovery requests are irrelevant to Sample's cognizable claims and grossly disproportional to the needs of the case.  (Def.'s Mem. of Law, ECF No. 26, at 3, 5-6).  It specifically takes issue with providing discovery as to Sample's alleged non-selection for a temporary detail in San Antonio ("San Antonio Detail") and for the re-announced Philadelphia Branch Manager position.  (*Id.* at 3).

Sample argues that the claims disputed by Defendant have been properly pleaded and administratively exhausted for purposes of discovery.  (Pl.'s Mem. of Law, ECF No. 29, at 6-17).  He contends that Judge Jones's ruling on the government's motion to dismiss has no bearing on discovery issues.  (*Id.* at 5-6).  Sample also argues that "Defendant's objections that plaintiff's fact discovery must be strictly limited to claims pleaded and exhausted has no support under Rule 26 in discrimination cases, and must be overruled and stricken."  (*Id.* at 12) (emphasis omitted).

In its reply brief, the government reiterates its argument that the scope of the claims in this case and, in turn, the scope of discovery, should be limited to the claims that Sample both administratively exhausted and properly pleaded.  (Def.'s Reply, ECF No. 30, at 1).

The Court need not (and does not) decide whether certain claims have been administratively exhausted and properly pleaded in this matter to resolve the Defendant's Motion

7

for Protective Order. This is because the scope of discovery in employment discrimination cases is not as limited as Defendant suggests. "[A]s a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employer was motivated by invidious discrimination." *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 194 n.8 (3d Cir. 2000) (citing multiple cases). "Evidence of an employer's conduct towards other employees has long been held relevant and admissible to show that an employer's proffered justification is pretext." *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 521 (3d Cir. 2003) (citing *McDonnell Douglas Corp.*, 411 U.S. at 804; *Becker*, 207 F.3d at 194 n.8). Accordingly, a plaintiff may contest "the employer's proffered explanation by showing 'that the employer treated other, similarly situated persons out of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons.'" *Id.* (quoting *Fuentes v. Lightolier Inc.*, 50 F.3d 1204, 1214-15 (3d Cir. 1995)). Sample cites to Eastern District of Pennsylvania decisions permitting discovery with respect to statistical evidence, similarly situated employees outside of the plaintiff's protected class who were treated differently, and other alleged incidents of discrimination. (Pl.'s Mem. of Law, ECF No. 29, at 11, 13, 15). *See Northern v. City of Phila.*, No. CIV. A. 98-6517, 2000 WL 355526, at *3-*5 (E.D. Pa. Apr. 4, 2000); *Young v. Lukens Steel Co.*, No. CIV. A. 92-6490, 1994 WL 45156, at *2-*5 (E.D. Pa. Feb. 10, 1994). However, these cases also recognize that there are limitations on the scope of discovery in employment discrimination proceedings, and discovery has been limited based on such factors as the time period and the type of alleged discrimination at issue. *See, e.g.*, *Young*, 1994 WL 45156, at *3.

Given this framework, the Court denies Defendant's Motion for Protective Order as to the discovery requests with respect to Sample's purportedly unexhausted claims of

8

discrimination—specifically his claims of discrimination against Defendant as to the temporary San Antonio position and the re-announced Philadelphia position. It also denies the motion as to his requests insofar as they seek discovery of Sample's own employment records and as to the initial Philadelphia position. However, the motion is granted with respect to Sample's broad requests for discovery concerning positions where Vega was the selecting official from 2015 through 2019 and positions over this same time period where Vega was not the selecting official—except to the extent that Sample seeks discovery as to positions that he actually "applied for."

### 1. Discovery with Respect to the Temporary San Antonio Position, Initial Philadelphia Position, and Re-Announced Philadelphia Position

In several RFPs and Interrogatories, Sample requests documents and information relating to the temporary San Antonio detail, the original "Philadelphia Supervisory HR Specialist" position, and the re-announced "Philadelphia Supervisory HR Specialist" position. (Def.'s Mot. for Protective Order, ECF No. 26-1, Ex. A at RFP Nos. 17-20, 22, 25-29, 31, 32; ECF No. 26-2, Ex. B at Interrogatory Nos. 11-22). The Court denies the Motion for Protective Order as to these discovery requests (RFP Nos. 17, 18, 19, 20, 22, 25, 26, 27, 28, 29, 31, and 32 and Interrogatory Nos. 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22).

Sample's document requests and interrogatories concerning the San Antonio detail seek documents and information that are relevant to Sample's exhausted claims of racial, gender, and age discrimination. Evidence of additional discriminatory actions against the plaintiff and other employees is generally relevant to establish that the employer was motivated by invidious discrimination or that its proffered justification constituted a pretext for discrimination. *See, e.g.*, *Ansell*, 347 F.3d at 521; *Becker*, 207 F.3d at 194 n.8. In fact, there is a clear overlap between Sample's claims of discrimination for failing to provide him with an opportunity to serve

9

temporarily as the Philadelphia Branch Manager and his allegations that he was a victim of discrimination because he was not selected for the temporary San Antonio Branch Manager position. The alleged decision-maker for both actions was the same individual (Vega). (*See, e.g.*, Compl., ECF No. 1, ¶¶ 15, 33, 41). It was the San Antonio manager (Hidalgo) who was chosen for the temporary posting in Philadelphia, and, given her alleged inability to manage both offices, it was Hidalgo who invited Sample to apply for the San Antonio position. (*Id.* at ¶¶ 34, 38-39). Sample claims that, in both instances, Vega selected individuals of a different race, gender, and age. (*Id.* at ¶¶ 19, 35, 41). Defendants thereby have failed to show that the discovery regarding the temporary San Antonio position would be grossly disproportional to the needs of this proceeding.

  Defendant concedes that Sample is entitled to discovery with respect to the originally announced "Philadelphia Branch Manager" position. Defendant's own proposed order expressly permits discovery as to the "Originally Announced Philadelphia Branch Manager" position as part of Claims III and IV. (*See* Def.'s Mot. for Protective Order, ECF No. 26, Proposed Order at ¶ 2.III, 2.IV). In its motion, Defendant acknowledges that their request for a protective order is not an opportunity to re-litigate their motion to dismiss, and suggests a "non-controversial compromise—namely, limiting the issues subject to discovery to those administratively exhausted claims set forth in Paragraphs 13 and 14 of Sample's Complaint." (*Id.* at ¶ 24 n.9). Paragraph 13 of the Complaint includes both Claim 3—alleging that Sample learned he was not selected for the "Supervisory HR Specialist Position, 19-002-GLM-MPA, in Philadelphia" because Defendant decided not to fill the vacancy from that announcement—and Claim 4—stating that the selecting officer announced this vacancy was closed because there were no worthy candidates. (Compl., ECF No. 1, ¶ 13). Accordingly, the Court denies the Motion for Protective Order as it relates to discovery concerning the originally announced position in

10

Philadelphia.

The Court also denies Defendant's motion as to the discovery requests concerning the re-announced "Philadelphia Supervisory HR Specialist" position. Evidence of alleged discrimination concerning this position is relevant to Sample's exhausted claims of discrimination and retaliation, and the government has not shown that producing such evidence would be unduly burdensome. As Defendant acknowledges, "[t]he 'Supervisory HR Specialist' positions, asserted by Sample in Claims 3-6 [i.e., the original and re-announced Philadelphia positions] . . ., are otherwise known as the Philadelphia Branch Manager position—the same position that is referenced in Sample's Claim 2 [i.e., the temporary Philadelphia posting]." (Def.'s Mot. for Protective Order, ECF No. 26, at ¶ 4). In fact, it is undisputed that a claim of retaliation as to the re-announced posting (Claim VI in Defendant's proposed order) was properly exhausted and pleaded in this matter and that discovery is proper as to whether "Plaintiff's non-selection for the [re-announced Philadelphia Branch Manager opening] was retaliation for his 2018 EEO activity." (*Id.* at ¶ 24) (quoting Rule 26(f) Jt. Rep., ECF No. 20, at 10). Defendant accordingly has already produced some documents and information concerning the re-announced posting. (*See, e.g.*, Def.'s Mot. for Protective Order, ECF No. 26-1, Ex. A at RFP Nos. 31-32; Ex. B at Interrogatory Nos. 20-22). However, to the extent that it withheld any documents or information on the grounds that discovery is not available on claims of discrimination (as opposed to a claim of retaliation) as to the re-announced position, such discovery should be produced.

        **2.**      **Discovery as to Other OPM Positions, Sample's Employment Materials, Rucker, and McIntyre**

In his RFPs, Sample seeks vacancy announcements, "lists of eligibles" (including documents identifying the race, gender, age, and grade of each candidate), application materials, and documentation relating to the selection of the candidates for all positions where Vega (either

alone or with another) was the "selecting official" for the time period from January 1, 2015 through March 30, 2019. (Def.'s Mot. for Protective Order, ECF No. 26-1, Ex. A at RFP Nos. 1-4). Sample also requests such documents as to all positions at GS-12 through GS-15 for the same time period for which Vega was *not* the selecting official. (*Id.* at RFP Nos. 5-8). He asks for all documents submitted by Sample in connection with such positions together with all documents relating to OPM's consideration of and decision not to select Sample for these positions. (*Id.* at RFP Nos. 9, 10, and 11). RFP No. 12 requests documents "[f]or each person identified and each position open and for which a candidate was selected under document (EEO bates 000185)." (*Id.* at RFP No. 12). Sample's interrogatories resemble his document requests. Sample asks Defendant, for the time period from January 1, 2015 through March 2019, for information regarding all open positions where Vega was the selecting official, including all positions Sample "applied for." (Def.'s Mot. for Protective Order, ECF No. 26-1, Ex. B. at Interrogatory Nos. 1-3). He also requests information for the same time period for "all OPM staff acquisition hires" where the selecting official was not Vega. (*Id.* at Interrogatory Nos. 4-6). Finally, Sample seeks information "[w]ith respect to document EEO bates 000185 ('Staffing Acquisition Hires between November 26, 2016 an[d] November 25, 2018')," and "[w]ith respect to document no. 000026 and the position of Examining Solutions Manager." (*Id.* at Interrogatory Nos. 7-8).

      Documents and information concerning positions Sample "applied for" are discoverable. Defendant seeks to block discovery of a plaintiff's own employment records or materials. Other than reiterating its position that the scope of discovery is limited to the exhausted and pleaded claims, Defendant does not specifically respond to Sample's assertion that he is requesting his own employment materials. (*See* Def.'s Reply, ECF No. 30, at 1-5). On the contrary, the government acknowledges in its opening brief that "[it] might take no issue with a request for

12

[d]ocuments pertaining to [both] Erika Vega *and* plaintiff [t]ogether." (Def.'s Mem. of Law, ECF No. 26, at 3). Evidence of other discriminatory acts committed by a defendant against a plaintiff is relevant "to establish whether a defendant's employment action against an employee was motivated by invidious discrimination," *Becker*, 207 F.3d at 194 n.8. Once the discovering party demonstrates relevance, a party seeking a protective order must show that good cause exists to limit or foreclose discovery by demonstrating a particular need for protection. *See, e.g.*, *Cipollone*, 785 F.2d at 1121. Defendant has failed to meet this burden. It has already produced documents and provided interrogatory responses as to Sample's applications for the temporary Kansas City position, the originally posted "Philadelphia Branch Manager" position, and the re-announced "Philadelphia Branch Manager" position. (*See, e.g.*, Def.'s Mot. for Protective Order, ECF No. 26-1, Ex. A at RFP Nos. 1-4, 9, 11; ECF No. 26-2, Ex. B at Interrogatory Nos. 1-3). It also appears that Sample applied for a limited number of positions during the time period covered by the discovery requests. (Compl., ECF No. 1, at ¶ 31, ¶ 27) (alleging that, "in addition to positions below," Sample applied for five positions since his prior promotion as result of EEO action in 2007).

However, the Court also determines that, as to the numerous positions he did not "apply for," Sample has failed to establish the relevance of the discovery he seeks, s*ee, e.g.*, *Bell*, 270 F.R.D. at 195. Even if he did satisfy the relevance requirement, Defendant has met its burden of establishing a particular need for protection.

Sample asserts that he has a right to this discovery as comparator evidence (Pl.'s Mem. of Law, ECF No. 29, at 13-14). But he does not explain how he is "similarly situated" to the disparate candidates and selectees who were considered and chosen by Vega and other decision-makers for various positions announced over the course of several years that Sample himself did not "apply for,". *See, e.g.*, *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir.

13

2009) ("To make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's class for purposes of a Title VII claim, the plaintiff must show [s]he and the employee are similarly situated in all *relevant* aspects.") (citations omitted).  As this Court has already observed, even the cases cited by Sample recognize that there are limitations to the scope of discovery in employment discrimination cases.  Judge Hutton observed in *Young* that "courts have imposed restrictions as to time period, the employing facility or work unit of the plaintiff, the job category to which plaintiff belongs, the type of action by which plaintiff was aggrieved such as as hiring, promotion, discharge, and the type of discrimination alleged, such as race, age, or sex."  *Young*, 1994 WL 45156, at *3 (citations omitted); *see also, e.g.*, *Northern*, 2000 WL 355526, at *3 (applying "similarly situated" standard to preclude discovery as to disciplinary matters with respect to firefighters who were, unlike plaintiff, either not charged with two specified offenses or not alleged to have been present at a fire station and to have failed to make a run to which he or she was assigned).  Similarly, Sample has not shown how this disparate and extensive discovery would support Sample's specific claims against Defendant.  Sample also refers to "Quality Assurance Team Leader Amy Rucker" and "Training Lead Nicole McIntyre" as comparators on "age, gender, and race during the relevant time period in the complaint" and asserts that he thereby "seeks comparator data tied directly to factual information contained (and reached under exhaustion) in the EEO investigator's report." (Pl.'s Mem. of Law, ECF No. 29, at 15-16).  However, he does not offer any explanation as to who these individuals are (other than providing their job titles) and why they have any relevance to his claims.  He similarly does not address the contents of the "Staffing Acquisition Hires" document.

       Defendant has also established that good cause exists to limit or foreclose discovery as to positions Sample did not "apply for."  Considering the evidence's lack of relevance, the burden and expense of production outweighs the need for such information.  *See, e.g.*, *Pansy*, 23 F.3d at

786-87. It is uncontested that Vega, as the manager of multiple branch offices, was responsible for dozens, and possibly hundreds, of positions across the country. (Def.'s Mem. of Law, ECF No. 26, at 4). As to the openings for which Vega was not the selecting official, ordering discovery regarding positions in a large department of the federal government over more than four years would be disproportionate and burdensome. (*See id.* at 5). Instead of disputing Defendant's claims regarding the disproportionate burden it would face, Sample merely speculates that discovery as to positions where Vega was the selecting official would not be overly broad, burdensome, disproportional to the needs of the case, or of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. (Pl.'s Mem. of Law, ECF No. 29, at 13). He suggests that the motion for a protective order should be denied because he could have sought discovery "over a *16 year period*" (*id.*), but the fact that he did not ask for even more discovery does not justify the extensive and disproportionate discovery he does seek in this case.

Accordingly, the Court denies Defendant's Motion for Protective Order as to RFP Nos. 1, 2, 3, 4, 5, 6, 7, and 8 and as Interrogatory Nos. 1 and 4 as to positions Sample "applied for" and grants the motion as to these discovery requests as to positions he did not "apply for." Furthermore, the Court denies Defendant's motion as to RFP Nos. 9, 10, and 11 and Interrogatory Nos. 2, 3, 5, and 6. The motion is granted as to RFP No. 12 and Interrogatory Nos. 7 and 8.

      **B.**    **Motion to Extend Discovery Deadlines**

In his motion to extend filed on October 20, 2022 (the deadline for fact discovery under this Court's scheduling order), Sample requests an order extending the deadlines to complete fact discovery and serve expert reports to December 19, 2022, "with the balance of the dates under the current scheduling order extended on a coterminous basis." (Pl.'s Mot. to Extend, ECF No.

31, at ¶ 40). In its October 31, 2022 filing, Defendant opposes the motion to extend deadlines, adding that it does not object to a sixty-day extension for the limited purpose of conducting the depositions of Sample and Vega. (Def.'s Resp., ECF No. 32, at 1).

This Court has broad discretion in deciding whether to grant an extension of the discovery deadlines. *See, e.g.*, Fed, R, Civ. P. 16(b)(4); *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs, L.P.*, 785 F.3d 96, 102 (3d Cir. 2015). Exercising this discretion, the Court determines that Sample has established good cause for an extension of time. A Rule 16 conference will be convened by telephone to discuss a new scheduling order.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Protective Order is granted in part and denied in part. The motion is granted as to RFP No. 12 and Interrogatory Nos. 7 and 8. The Court grants the motion as to RFP Nos. 1, 2, 3, 4, 5, 6, 7, and 8 and Interrogatory Nos. 1 and 4 as to positions Sample did not "apply for." The Court denies Defendant's Motion for Protective Order as to RFP Nos. 1, 2, 3, 4, 5, 6, 7, and 8 and Interrogatory Nos. 1 and 4 as to positions Sample "applied for." The Court further denies the Motion for Protective Order as to RFP Nos. 9, 10, 11, 17, 18, 19, 20, 22, 25, 26, 27, 28, 29, 31, and 32 and Interrogatory Nos. 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22. The Court also grants Plaintiff's motion to extend the deadlines. The Court will convene a Rule 16 conference by telephone to discuss a new scheduling order.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge